```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

Leon Smith,                      :
        Plaintiff,               :
                                 :
        v.                       :    File No. 1:06-CV-247
                                 :
Sue Blair, Kory Stone,           :
James Honsinger, Bennie          :
Woods,                           :
        Defendants.              :
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 33, 35 and 39)

Plaintiff Leon Andre Smith, a Vermont inmate proceeding *pro se*, claims that prison officials failed to protect him from being assaulted by a fellow inmate. He also claims that he lost his prison job because of his involvement in the assault. All parties have now moved for summary judgment. For the reasons set forth below, I recommend that Smith's motions for summary judgment (Papers 33 and 35) be DENIED, and the defendants' motion for summary judgment (Paper 39) be GRANTED.

Factual Background

During the period of time in question, Smith was incarcerated at the Northwest State Correctional Facility in Swanton, Vermont. He was confined in the "G-pod" unit in a two-man cell along with inmate Travis Barrow. On the evening of July 20, 2006, the two men had an argument during

which, Smith contends, Barrow threatened him with physical harm.

Shortly thereafter, Correctional Officer Bennie Woods met with Smith to discuss Smith's request for a cell transfer.  Smith claims that he requested the transfer for his own protection.  Woods disputes this assertion, claiming that Smith did not offer a reason for the request.

Although Woods had authority to transfer inmates within the G-pod living unit, there were no additional beds available in that unit.  Woods therefore contacted the shift supervisor, James Honsinger, and informed him that Smith and Barrow were not getting along.  Honsinger had authority to transfer an inmate to a different unit.

It is undisputed that Honsinger met with both inmates. Smith claims that he again requested relocation for his safety.  Like Woods, Honsinger asserts that Smith gave no reason for his request.  The defendants claim that they offered both inmates a transfer to "Delta Unit," a claim that Smith specifically disputes.  According to Smith, "If a move to Delta Wing would have been offered, I would have excepted [sic] it rather than being assaulted . . . ." (Paper 40-2 at 2).  After meeting with Smith and Barrow,

Honsinger asked the two men "if they could get along for the evening and they indicated to him that they would be fine." (Paper 39-6 at 4).  Consequently, the inmates were returned to their cell.

Almost immediately after returning to their cell, Smith and Barrow had a physical altercation.  Although the specifics of the altercation are disputed, Smith alleges that Barrow punched him in the left eye and grabbed him, not allowing him to leave the cell.  Honsinger and Woods quickly returned to the cell and both inmates were handcuffed. Smith and Barrow were then taken to Delta Wing and, according to Smith, placed in one-man cells.

At subsequent hearings, Barrow pleaded guilty to assault and Smith was found not guilty.  Smith alleges that after he was returned to general population, Woods "told me that he knew something was going to happen bad between me an[d] inmate Barrow[] when he left us in the cell."  (Paper 35 at 4).  Woods now contends that he did not know either Smith or Barrow to have any history of assaultive behavior while in prison.  Honsinger similarly asserts that he had no basis to believe that the two inmates would have a physical altercation.

3

Smith is now suing various defendants for failing to keep him safe. He also claims that he lost his prison job as a result of his role in the altercation. He brings his claims under the Eighth and Fourteenth Amendments. (Paper 35 at 12).

## Discussion

The defendants in this case are Woods, Honsinger, prison Superintendent Sue Blair and Chief of Security Kory Stone. Smith has moved for summary judgment on the merits of his Eighth Amendment claim. The defendants have cross-moved for summary judgment, arguing official capacity immunity, lack of personal involvement on the part of defendants Blair and Stone, lack of deliberate indifference by Woods and Honsinger, and qualified immunity.

I. <u>Summary Judgment Standard</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried, and that the undisputed material facts warrant judgment for the moving party as a matter of law. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Salahuddin v. Goord</u>, 467 F.3d 263, 272-73 (2d

Cir. 2006); Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006).  The burden of demonstrating the absence of any genuine dispute as to material facts rests upon the party seeking summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of that party's case on which it bears the burden of proof at trial.  Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003).

The non-moving party must put forth "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  Nevertheless, a party opposing a motion for summary judgment cannot rely on mere speculation or conjecture.  See, e.g.,

Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."). If a plaintiff is proceeding *pro se*, courts are to construe the complaint and other pleadings liberally. See, e.g., Williams v. Edwards, 195 F.3d 95, 96 (2d Cir. 1999).

II. Official Capacity Immunity

All four defendants argue that Smith's damages claims against them in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment prohibits suits in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress. See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment also bars claims against state employees sued in their official capacities. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.

Relevant to this case, there has been no waiver of

Vermont's sovereign immunity and no abrogation of that immunity by Congress. Indeed, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment. See 12 V.S.A. § 5601(g). Accordingly, all damages claims against the defendants in their official capacities should be DISMISSED.

III.  Individual Capacity – Blair and Stone

Defendants Blair and Stone contend that the claims brought against them in their individual capacities should be dismissed because they were not personally involved in any alleged wrongdoing. As stated above, Blair was the prison Superintendent at the time, while Stone was the Chief of Security. Smith does not allege that either defendant was present during the events in question, and concedes in his summary judgment motion that both defendants are being sued because of their positions as supervisors. (Paper 35 at 11).

The Second Circuit has made clear that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on respondeat superior.

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior.' Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citing

7

> Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)).  To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations.  See Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995).  By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
>
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."  Hernandez, 341 F.3d at 145; see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

Smith's motion for summary judgment explains that Blair is listed "as a defendant in this claim because all occurrences at the Northwest State Correctional Facility are under the auspices of Sue Blair, who knew or should have known in her official capacity that petitioner was being

threatened with physical harm and danger." (Paper 35 at 11). Similarly, Stone is named as a defendant because he "failed to insure the petitioner's safety which is his responsibility as well." Id. at 11. There is no allegation that either defendant was directly involved, or that either had notice of Smith's problems with his cellmate. Nor does he claim that these defendants were responsible for a policy or custom that allowed for the alleged constitutional violation. Further, the complaint makes no allegation of grossly negligent supervision. Smith has therefore failed to raise a plausible individual capacity claim against defendants Blair and Stone, and the § 1983 claims against them should be DISMISSED.

IV. <u>Individual Capacity – Woods and Honsinger</u>

Smith's individual capacity claims against Woods and Honsinger do not receive the protections available to Blair and Stone, as Woods and Honsinger were directly involved in the allegedly wrongful conduct. Woods and Honsinger instead argue that they acted reasonably given the information provided.

There are significant disputes of fact with respect to what Smith told Woods and Honsinger. As set forth above,

9

the Court must view the facts in a light most favorable to the non-moving party, and may not make credibility determinations.  Accordingly, the Court must accept Smith's assertion that he told both Woods and Honsinger that he feared for his safety.  In response to this allegation, the defendants contend that Woods acted reasonably by first considering a cell transfer within the same unit, and then summoning Honsinger when it became clear that there was no space available.

    Honsinger claims that he offered both inmates the opportunity to transfer to Delta Unit, and both declined.  Smith disputes this claim, asserting that he was never offered such a transfer.  It is undisputed that Honsinger met with both inmates and spoke to them "about their responsibilities to each other as cellmates and as residents of the G-pod living unit."  (Paper 39-6 at 4).  According to Honsinger, he only left the cell after he was assured by both Smith and Barrow that they would be able to "get along for the evening."  Id.  Furthermore, Woods contends that there was nothing in these inmates' histories that would have caused him to expect violence, while Honsinger asserts that he had no basis to believe that a physical assault

would take place.  Id. at 5.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to make reasonable efforts to ensure inmate safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  This duty includes protecting inmates from harm at the hands of other inmates. See id.; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). To establish a constitutional violation, a prisoner must show that the conditions of his incarceration posed a substantial risk of serious harm and that the prison official was deliberately indifferent to his safety.  See Farmer, 511 U.S. at 834.

The Eighth Amendment standard contains an objective test and subjective test.  Objectively, Smith must prove that he was incarcerated under conditions that posed a substantial risk of serious harm.  Farmer, 511 U.S. at 834, 837; Dawes v. Walker, 239 F.3d 489, 493-94 (2d Cir. 2001). Subjectively, he must show that prison officials knew of, but disregarded, an excessive risk to his safety.  Farmer, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

11

inference."). "For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated." Goode v. Faneuff, 2008 WL 3360833, at *2 (D. Conn. Aug. 8, 2008) (citing Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985).

Claims involving the alleged failure of prison officials to protect an inmate from harm are also subject to review under the Fourteenth Amendment's substantive due process provision. Although the requisite mental state for establishing a Fourteenth Amendment failure to protect claim is somewhat unclear, it is at least apparent that to be legally cognizable under that provision, the actions alleged on the part of a defendant must rise above mere negligence. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986) (lack of due care does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent); Daniels v. Williams, 474 U.S. 327, 328 (1986) (same); Morales v. New York State Dep't of Corrs., 842 F.2d 27, 30 (2nd Cir. 1988) (section 1983 does not provide cause of action for negligent failure of prison officials to

12

protect an inmate from injury).

The defendants argue that Smith as failed to show deliberate indifference.  The facts viewed in Smith's favor indicate that he warned both Woods and Honsinger of a specific threat to his safety.  Although the defendants dispute that they were ever provided such a warning, their response in any event was not indifferent.  Woods looked into a cell transfer, but concluded that there was no room in Smith's unit.  Accordingly, he called someone – Honsinger – who had authority to transfer Smith to a different unit.  Honsinger met with the prisoners and received their assurances that they would be fine for the night.  There was no history of violence between these two inmates, and neither inmate had a history of assaultive behavior while in prison.  Given these facts, the Court should conclude that, from a subjective standpoint, Woods and Honsinger did not act with deliberate indifference to Smith's situation.  See, e.g., Farmer, 511 U.S. at 844 (prison officials "knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."); Desulma v. City of New York, 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (where inmate requested

13

protection, lack of history of violence between inmates and nature of verbal threats provided "no reason to infer the existence of a threat of harm"). Their motion for summary judgment for failure to protect Smith from harm should, therefore, be GRANTED.

V.  Qualified Immunity

The defendants further argue that Woods and Honsinger are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts must first determine whether, accepting the plaintiff's factual allegations as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). If there is a constitutional violation, courts then proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002) (citing Hope v. Pelzer, 536 U.S. 730 (2002)).

Here, the Court need not continue to the second prong.

14

As discussed above, Smith has failed to show that the defendants violated his constitutional rights.  Woods and Honsinger are, therefore, entitled to qualified immunity.

VI.  Loss of Prison Job

To the extent that Smith is seeking relief for the loss of his prison job, he has failed to state a constitutional claim.  There is no indication in the record, or allegation in the complaint, that Smith's job loss was the result of retaliation by prison officials.  Instead, Smith's filings seem to suggest that he was wrongfully punished for his role in the altercation with Barrow.  The Court should therefore construe the claim as asserting a due process violation.

Courts have uniformly held that a prisoner has no constitutional right to a prison job.  See, e.g., Frazier v. Coughlin, 81 F.3d 313, 318 (2d Cir. 1996); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987).  Indeed, the Due Process Clause does not protect against "every change in the confinement having a substantial adverse impact" on inmates, so long as those changes are "'within the normal limits or range of custody which the conviction has authorized the State to impose.'"  Sandin v. Connor, 515 U.S. 472, 478 (1995) (quoting Meachum v. Fano, 427 U.S. 215, 225 (1976)).

15

Because removal from a prison job is "well within the terms of confinement ordinarily contemplated by [a] prison sentence," Smith cannot state a constitutional claim. Bussey v. Phillips, 419 F. Supp. 2d 569, 580 (S.D.N.Y. 2006).

## Conclusion

For the reasons set forth above, I recommend that Smith's motions for summary judgment (Paper 33 and 35) be DENIED, the defendants' cross-motion for summary judgment (Paper 39) be GRANTED, and this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 1st day of October, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).